15846

STATE v. McLAUGHLIN

(38 S. E. (2d), 492)

*Mr. John E. Stansfield,* of Aiken, for Appellant,

*Messrs. B. D. Carter,* Solicitor, of Bamberg, and *W. M. Smoak,* of Aiken, for Respondent,

June 6, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court.

The Appellant, Hayden McLaughlin, being charged with murder, was tried at the May, 1945, term of Court of General Sessions for Aiken County before the Honorable E. H. Henderson, presiding judge, resulting in a verdict of guilty

of involuntary manslaughter, from which he now appeals to this Court.

The first question raised by the exceptions is whether or not it was proper upon the evidence adduced, for the presiding judge to charge the law applicable to involuntary manslaughter.

An examination of the testimony shows that Appellant operated a place for the purpose of holding dances and selling of sandwiches, beer and wine. That on the night in question, approximately two hundred and fifty people were present in and about the place of business. As in most cases of this kind, the testimony was conflicting, the Appellant himself contending that he was ordered by a special policeman, on duty at this place, named S. W. Widener, to detain and hold two negro women who had been fighting in the place of business pending his call to headquarters for help, that he went outside of the place and told these two persons that they would have to wait for the law, whereupon he was attacked by both women and an unidentified man, that while fighting he drew his pistol and fired twice. The circumstances tend strongly to corroborate the Appellant, but Widener states positively that at no time did he request Appellant to do anything to aid him in making an arrest, therefore, it became a jury question. There was other testimony that Appellant pulled out his pistol and began firing recklessly and at random in the darkness after the difficulty, knowing that there was a crowd about the place. One defense witness testified that Appellant stated to him that he hit somebody and the pistol went off accidentally, but Appellant himself testified as follows:

"Q. What did you do?

A. I pulled out my pistol and went to shooting.

Q. Now, Mack, who were you shooting at?

A. At nobody in particular—shot to get them off of me.

Q. Who were you shooting at—the three people?

A. No, sir."

Later on upon cross examination, the following was elicited:

"By Solicitor:

Q. Well, anyway, you have such a big business and such big crowds, you have to have police protection to run it at all?

A. Yes, sir; at times.

Q. Nobody killed anybody down there, except the one you killed?

A. No, sir; I never heard about it.

Q. And you got two one night—very nearly killed one—crippled a woman and killed a man?

A. Yes, sir; accidentally.

Q. Accident?

A. Yes, sir.

Q. I believe that is what you told Mr. Harley when you were first arrested?

A. Yes, sir.

Q. You didn't mean to shoot the pistol?

A. No, sir.

Q. Wait a minute—did you tell Mr. Harley it was an accident, that your pistol went off and you didn't mean to shoot it?

A. I told him that.

Q. Show that jury how it can shoot accidentally?

A. I can't show them, for it can't shoot until you pull the trigger, but people were accidentally hit.

Q. Didn't you have any particular person to shoot at?

A. I wasn't shooting at anybody."

The Defendant at no time claims to have been shooting at either of the three parties who he claims to have been attacking him, but was shooting only to get them off. The testimony was uncontradicted that there was a large crowd all around and this is further borne out by the fact that one bystander was killed and another wounded by the two shots that were fired.

A person who causes another's death by the negligent use of a pistol or gun is guilty of involuntary manslaughter unless the negligence is so wanton as to make the killing murder. *State v. Gilliam,* 66 S. C., 423, *State v. Quick,* 168 S.

C., 76, 23 C. J. S., 863, 41 C. J. S., 201, 202. In this case there was sufficient evidence to go to the jury as to whether or not the Appellant was negligent in firing as he did at random in the darkness knowing that others were about.

The charge as to the indictment was as follows:

"The indictment says it was feloniously, willfully and maliciously done. That charges the crime of murder. The indictment also charges, if you leave aside the charge of malice that he also killed him feloniously, willfully and unlawfully and that charge is voluntary manslaughter. The indictment, even leaving aside the idea of willfulness, the indictment charges that it was an unlawful killing, which charge is known as involuntary manslaughter. Those three charges are for the jury. The charge is made by the State by the indictment and charges either that the defendant is guilty of murder, or intentional manslaughter or unintentional manslaughter, depending upon the facts, as found by the jury.

"The defendant has entered the plea of not guilty and by doing so, he denies any guilt; he denies that he acted in malice and consequently denies that he is guilty of murder. He denies a willful homicide, so consequently denies intentional manslaughter. He denies an unlawful homicide and therefore, consequently denies that he is guilty of involuntary manslaughter."

The defense of self-defense was also charged as its application to one who shoots at one person and kills another. The question of whether defendant was guilty as charged, was, of course, a question of fact to be determined by the jury. It is well-settled law that the Court should charge only those principles of law which are applicable to issues made at the trial and have some substantial relation thereto. *State v. Gowan,* 178 S. C., 78, 182 S. E., 159. *State v. Johnson,* 159 S. C., 165, 156 S. E., 353. *State v. Faulkner,* 151 S. C., 379, 149 S. E., 108. *State v. Bealin,* 201 S. C., 490, 23 S. E. (2d), 746, and others.

Under the facts and testimony in this case this court is of the opinion that the law applicable to the charge of in-

voluntary manslaughter was properly charged and this contention must be resolved against the Appellant.

Appellant further contends that the trial judge committed error in charging the jury "If you have a reasonable doubt as to whether he is guilty of voluntary or involuntary manslaughter, give the benefit of the doubt and find him guilty of involuntary manslaughter which carries much less penalty", in that he was laying-before the jury the proposition that if there was a reasonable doubt as to his being guilty of voluntary manslaughter. This contention would unquestionably be right if it were not considered in connection with the charge as a whole.

If there was testimony adduced which would create a reasonable doubt as to whether defendant was guilty of a greater or lesser offense, it was proper for the court to direct the jury to find the defendant guilty of the lesser offense. *State v. King,* 158 S. C., 251, and 155 S. E., 409.

Taking this in connection with other portions of the charge, it is clear that the language means that if the jury concludes that the defendant is guilty and has a reasonable doubt as to the degree of guilt they should find him guilty of the lesser form.

The following are excerpts from the charge:

"At the beginning of the trial, the defendant is presumed to be innocent and not only at that time, but throughout the trial of the case, up until this moment that you gentlemen go into your jury room and make your decision as to the case, the defendant is clothed with presumption of innocence. To which presumption the benefit of which, he is entitled until such time as the jury may become convinced of his guilt beyond a reasonable doubt. The State of South Carolina has the burden of proving the defendant's guilt beyond a reasonable doubt. The law does not say beyond a mere doubt, because it is possible for a person to have a mere fanciful, imaginary doubt. The burden is upon the State to prove beyond a reasonable doubt, which is a substantial doubt. * * *

"Therefore, gentlemen, you must say from the testimony, whether or not, if you find that the killing was done as charged and that the killing was done by the defendant of LaBorde and that it was unintentional, without malice, why, then, decide whether or not the defendant handled the firearm in a negligent manner. If you find that he did not handle it in a negligent manner and it was merely an accident, which we usually call an accident or mischance—something unexpectedly taking place, not according to the usual course of things, or without negligence, why, then, of course, the defendant would not be guilty of involuntary manslaughter, because, as we have seen, involuntary manslaughter includes as an essential part of it, the negligent use of a deadly weapon. * * *

"The first possible form of your verdict would be, 'guilty of murder', in the event of such a verdict the Court would sentence the defendant to death in the electric chair.

"The second possible form of your verdict would be 'guilty of murder, with recommendation to the mercy of the Court'. In the event of such a verdict, the Court, under the law, would sentence the defendant to imprisonment for the balance of his natural life. The jury does not have to have any reason for recommending mercy; does not have to give any reason; does not have to state any reason in its verdict, or have any reason. It is purely a matter for the jury.

"The third possible form of your verdict would be 'guilty of voluntary manslaughter'. You gentlemen understand, as I said before, voluntary means intentional. The word 'voluntary' has the idea of the act of will. Intentional means the same thing, but the legal phrase is 'voluntary manslaughter'. If you find the defendant 'guilty of voluntary manslaughter', it would be my duty to sentence him to prison for not less than two years or not more than thirty years, either one of those limits, or anywhere in between, at the discretion of the presiding judge.

"The fourth possible form of your verdict would be 'guilty of involuntary manslaughter'. I emphasize the 'in'—'involuntary' to show that it was unintentional. In case of a

verdict of involuntary manslaughter, it would be my duty to sentence the defendant to imprisonment to not less than three months or not more than three years, at the discretion of the presiding judge.

"The fifth possible form of your verdict, gentlemen, would be 'not guilty'."

The charge as a whole seems to be entirely fair and no request being made for further instructions, this court is of the opinion that all exceptions should be dismissed *and it is so ordered.*

Judgment affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.