THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL D. DeMUMBREE (Impleaded), Defendant-Appellant.

First District (1st Division)    No. 79-1482

Opinion filed July 13, 1981.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes and Casimir J. Bartnik, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a jury trial, defendant Paul D. DeMumbree was convicted of voluntary manslaughter and aggravated battery and sentenced to concurrent terms of three years for both offenses. On appeal, defendant contends that the trial court erred in failing to instruct the jury as to the offense of involuntary manslaughter.

Defendant was charged by information with murder, attempt murder and aggravated battery in connection with the April 28, 1978, shooting death of Phillip Bianchi and the wounding of Daniel O'Connor. Prior to jury selection, the defense and the State stipulated to the following facts: Seventeen shotgun pellets were removed from the body of Bianchi. Defendant had purchased a 12-gauge Springfield model 67 pump action shotgun on November 25, 1975. O'Connor had suffered a severe shotgun wound of the left elbow, chest and upper abdomen. On April 29, 1978, police recovered a spent 12-gauge shotgun shell from the rear set of defendant's 1973 Ford station wagon, 15 live 12-gauge shells from the glove compartment of the station wagon, and the Springfield model 67 shotgun registered to defendant from behind a ceiling trap door in defendant's garage. Forensic scientist Walter Sherk had concluded that the spent shell found in the rear of defendant's station wagon had definitely been fired from defendant's Springfield shotgun.

Testimony revealed that between 8 and 8:30 p.m. on April 28, 1978,

Phillip Bianchi arrived at Banti's Tap in Franklin Park, Illinois. He was joined at the bar by Jack Denham and Ken Klesch. Daniel O'Connor arrived later. Defendant and Thomas Ostergard were already seated at the bar. Bianchi and defendant argued over possession of a bar stool until the bartender resolved the dispute. At about 10 p.m., defendant and Ostergard left the tavern, but returned a half hour later and sat down at a table. Bianchi voiced the suspicion that one of the men had a gun. An argument erupted and O'Connor frisked defendant for weapons. Defendant and Ostergard then left the tavern. Minutes later, Bianchi, O'Connor and Klesch also left the tavern.

Klesch testified that after leaving the tavern he observed a station wagon parked on the street and walked up to it. As he approached the car, Klesch saw defendant behind the wheel and Ostergard seated next to him. He then saw a shotgun lying on the floor in front of Ostergard and yelled, "He's got a gun." Klesch saw defendant pick up the gun and point it at the group of men gathered on the passenger side of the station wagon. O'Connor grabbed Ostergard, while Klesch ran around the rear of the car and approached the driver's door, then ran away when he found the door locked. Klesch heard two shots and heard Bianchi scream, "Ken, they shot me."

O'Connor testified that he approached defendant's station wagon from the passenger side, with Klesch walking ahead of him and Bianchi walking just behind him. He saw defendant behind the wheel and Ostergard seated next to him. Klesch said, "Hey, they got a gun" and crouched down to go to the rear of the car. O'Connor grabbed Ostergard and pulled him out of the station wagon. At that point a shotgun blast was fired out the rear window of the station wagon. O'Connor punched Ostergard, who fell, then ran away. O'Connor then saw defendant pointing the shotgun at him, saw a flash and felt the shot strike him.

Defendant was arrested on the afternoon following the shooting. After being advised of his *Miranda* rights, defendant stated that a friend of his was pulled from the car and he shot in that direction. Defendant fired three shots, the first two out of the passenger door and the third out the rear quarter on the passenger's side. Defendant saw two people standing in the direction where the first two shots were fired. He then saw a large group of people gathering towards the rear of the right side of the car and fired in that direction into the crowd. Defendant stated to police that he had fired the gun to protect Ostergard from attack by O'Connor and Bianchi, but did not think he had shot anyone.

Defendant submitted two instructions on involuntary manslaughter. The trial court refused to give the proposed instructions because they would be inconsistent with defendant's instructions on the theory of self-

defense and because the evidence presented did not justify a finding of recklessness.

Defendant's sole argument on appeal is that the trial court erred in failing to instruct the jury as to involuntary manslaughter.

■■■ It is well established that if there is some evidence in the record which, if believed by a jury, would reduce the crime to involuntary manslaughter, defendant has a right to an instruction defining the lesser-included offense. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; *People v. Boisvert* (1975), 27 Ill. App. 3d 35, 325 N.E.2d 644.) In order to justify an instruction on involuntary manslaughter there must be some evidence in the record which shows that defendant recklessly performed such acts causing death as were likely to cause death or great bodily harm. Ill. Rev. Stat. 1979, ch. 38, par. 9—3(a); *People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178; *People v. Boisvert*.

■■ We agree with the State that an instruction as to involuntary manslaughter was not justified by the evidence in the record which shows defendant intentionally and deliberately aimed and fired the shotgun at the group of men surrounding his car. In cases where a defendant voluntarily and wilfully commits an act which has the natural tendency to cause death or great bodily harm, an involuntary manslaughter instruction is not warranted. *People v. Adams* (1980), 91 Ill. App. 3d 1059, 415 N.E.2d 610; *People v. Hanrahan* (1978), 64 Ill. App. 3d 207, 380 N.E.2d 1075, *cert. denied* (1979), 444 U.S. 828, 62 L. Ed. 2d 36, 100 S. Ct. 53.

■■ In addition, the theory of defense at trial was self-defense or defense of a third party. Because the theories of self-defense or defense of a third party presuppose an intention to kill or cause great bodily harm, these theories are inconsistent with the crime of involuntary manslaughter which, by definition, is evidenced by the mental state of recklessness, not intent. (*People v. Adams; People v. Mitchell* (1973), 12 Ill. App. 3d 960, 299 N.E.2d 472; *People v. Johnson* (1964), 54 Ill. App. 2d 27, 203 N.E.2d 283.) By arguing that he acted in self-defense, defendant is precluded from arguing that his acts were reckless.

We find that the trial court properly refused to instruct the jury as to the offense of involuntary manslaughter.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.