## S90A0244. LAMON v. THE STATE.
### (390 SE2d 582)

HUNT, Justice.

Mark Daniel Lamon was convicted of the malice murders of Frankie Cook and Roy NeSmith and one count of possession of a firearm by a convicted felon, and sentenced to two consecutive life sentences for the murders and a consecutive five-year sentence for the possession charge.[1] He appeals, enumerating as error the trial court's refusal to charge involuntary manslaughter, admission into evidence of certain expert testimony, and refusal to allow defense counsel to cross-examine a prosecution witness, the defendant's mother, about the violent reputation of one of the victims. We affirm.

The afternoon and evening before the murders, victim Frankie Cook had visited the defendant at the defendant's house, where the defendant lived with his mother. The two of them spent the afternoon drinking and swimming and, after the defendant took some Valium that Ms. Cook had brought with her, the defendant fell asleep while the victim was showering. The following morning, the defendant told his mother that Cook had taken several items of his, including his keys. The defendant drove with a friend, Walton, and the defendant's mother, to the victim's house. The defendant's mother went to the victim's door and asked that she return the keys, but Cook refused to do so. Cook gave the defendant's mother a note for the defendant which stated the defendant owed Cook money and, after his mother showed him the note, the defendant took a handgun from his mother's purse, left the car, and went into the victim's house. Several minutes later, witnesses heard gunshots coming from inside the victim's house and, when the defendant returned to the car, he told a witness he had "just popped some firecrackers." On the way back home, he told his mother, "If anything happens to me, bury me beside my father."

At trial the defendant testified he drew his gun to shoot NeSmith after he saw NeSmith reaching into the cushion of the sofa, as if looking for a weapon, but that Ms. Cook tried to grab the gun which acci-

---

[1] The crimes were committed on July 9, 1989, and Lamon was indicted by a Bibb County Grand Jury in its August 1989 term. Following a jury trial, Lamon was convicted and sentenced on September 19, 1989. His motion for new trial, filed October 16, 1989, was denied on October 23, 1989. The transcript was filed on October 11, 1989. The notice of appeal was filed on October 25, 1989 and the record was docketed in this court on November 21, 1989. The case was submitted for decision without oral argument on January 11, 1990.

dentally went off, hitting NeSmith. The defendant testified he shot Cook in self-defense after she "flew at" him and said "[Y]ou killed Roy, you son-of-a-bitch, and now you're going to die." He admitted shooting Ms. Cook twice in the head although he did not see a weapon in her hands, and she "wasn't even close enough to slap me at the time." No weapons were found near the victims or anywhere in the house and both victims were found seated, Ms. Cook with a cigarette between her feet which had fallen and burned the carpet, and NeSmith with cigarette ashes on his pants. All the evidence at the scene indicated the victims were shot while seated.

The victims died as a result of injuries from bullets entering their brains. The county medical examiner testified that both victims had been shot from a distance of between one and three feet. When the defendant was arrested in his home, he was sweating profusely, appeared intoxicated, and had a revolver in his pocket and a loaded gun across his knee. Tests later determined the fatal shots had been fired from the revolver taken from the defendant's pocket.

1. We find the above evidence sufficient to support the convictions under the standard established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court's refusal to charge involuntary manslaughter, OCGA § 16-5-3 (b) (the commission of a lawful act in an unlawful manner) in connection with the killing of NeSmith was not error under the facts of this case. The law is well settled in this state that a charge on involuntary manslaughter is not required where the defendant asserts using a gun in self-defense. *Crawford v. State*, 245 Ga. 89, 94 (3) (263 SE2d 131) (1980). At trial, the defendant claimed self-defense as to each homicide and the trial court's instructions were complete on that issue. The trial court also charged on the defense of accident, at the defendant's request, although the evidence hardly authorized such a charge. Equally nonmeritorious are the defendant's assertions that although he intended to shoot NeSmith, the interference with that act by the other victim caused NeSmith's death to be accidental and that such conduct on the defendant's part amounted to a lawful act committed in an unlawful manner. To the contrary, the defendant's preliminary conduct toward NeSmith amounted, at the very least, to an assault with a deadly weapon. Even if NeSmith's death were truly accidental, the defendant's conduct would not, for that reason, entitle him to a charge on involuntary manslaughter.[2]

3. The trial court's determination that the medical examiner was

---

[2] Coupled with the defendant's assertion of "accident" is a reliance on the doctrine of "imperfect" self-defense which is permitted in some states to reduce murder to voluntary manslaughter. It has, however, no application to involuntary manslaughter. See generally LaFave & Scott, *Substantive Criminal Law*, Vol. 2, § 7.11 (1986).

qualified to render an opinion as to whether the victims were shot at close range was not an abuse of discretion. The witness' testimony on voir dire as to his training and experience fully supported the court's conclusion as to his expertise in this regard. *Bradley v. State*, 254 Ga. 654, 655 (2) (333 SE2d 578) (1985).

4. In his final enumeration, the defendant contends the trial court improperly refused to allow him to question a state's witness, his mother, about victim Cook's reputation for violence. On the state's objection to this question, the trial court correctly stated the defendant had the right to present evidence of the victim's character for violence as part of his case, but that the question was improper cross-examination because there was not yet any evidence that the victim was the aggressor. See *Curtis v. State*, 241 Ga. 125, 126 (1) (243 SE2d 859) (1978). The court offered to permit the defendant to resume his cross-examination in the event the foundation evidence was offered and, although the defendant did not further pursue that line of inquiry, he did elicit admissions from the defendant's mother that Ms. Cook was drunk on the day of the shootings, that she had seen Ms. Cook drunk and angry in the past, that Ms. Cook had a temper and was a strong-willed person, and that the witness was scared of Ms. Cook. We find no abuse of the trial court's discretion in limiting the scope of cross-examination, see *White v. State*, 253 Ga. 106, 110 (4) (317 SE2d 196) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 25, 1990.

*Walter J. Lane, Jr.*, for appellant.
*Willis B. Sparks III, District Attorney, Graham A. Thorpe, Robin B. Odom, Thomas J. Matthews, Assistant District Attorneys, Michael J. Bowers, Attorney General, C. A. Benjamin Woolf*, for appellee.