1739

The STATE, Respondent v. Charles MORRIS, Jr., Appellant.

(415 S.E. (2d) 819)

Court of Appeals

*Daniel T. Stacey, South Carolina Office of Appellate Defense,* of Columbia, *for appellant.*

*T. Travis Medlock, Atty. Gen., Harold M. Coombs, Jr.,* and *Norman Mark Rapoport, Asst. Attys. Gen.,* of Columbia, and *Charles Molony Condon, Sol.,* of North Charleston, *for respondent.*

Heard Sept. 17, 1991; Decided Dec. 9, 1991.

Reh. Den. Mar. 6, 1992.

BELL, Judge:

Charles Morris was indicted for the murder of William Burkhalter. From a jury verdict finding him guilty of voluntary manslaughter, Morris appeals. We affirm.

The facts of the case are basically undisputed. At about 4:30 on the afternoon of October 6, 1989, Morris drove with his sister and a friend to Burkhalter's house. Morris was looking for Burkhalter's son, Huey, who he claimed owed him money. Huey was not there, but Burkhalter was in the yard. Burkhalter and Morris had words. Burkhalter told Morris to leave. When Morris refused, Burkhalter hit him on the side of the head. The blow knocked Morris back about two steps, at which point he said, "I'm leaving." As Burkhalter turned and began to walk away, Morris shot him in the back with a .22 caliber pistol. Burkhalter died the next day from the gunshot wound.

## I.

At trial, Morris's sister testified that he had been hit in the head with rocks when he was a small boy, causing him to have epilepsy. A forensic psychiatrist testified that a person with physical damage to the frontal brain lobes might respond with greater emotion than a normal person to any particular situation. He stated such an emotional response is not voluntary if it results from frontal lobe brain damage. There was also evidence that Morris told a police officer he "just exploded" when Burkhalter hit him on the head and got mad "because my head was hurting."

At the close of the evidence Morris asked the judge to charge the jury on involuntary manslaughter. He claimed the charge was warranted by evidence that he shot Burkhalter as an unintentional reflexive action after being struck on the head. He also claimed his carrying a pistol showed a reckless disregard for the safety of others. The judge refused to charge involuntary manslaughter, but he did charge murder, voluntary manslaughter, self defense, not guilty by reason of insanity, and guilty but mentally ill.

At common law one who causes another's death by the negligent use of a deadly weapon is guilty of involuntary manslaughter if the death is unintentionally caused. *State v. Quick*, 168 S.C. 76, 167 S.E. 19 (1932). By statute, the degree of negligence required for involuntary manslaughter is a reckless disregard of the safety of others. *See*, Section 16-3-60, Code of Laws of South Carolina, 1976; *State v. Gandy*, 283 S.C. 571, 324 S.E. (2d) 65 (1984). However, the act must still be unintentional.

Although an indictment for a higher offense will sustain a conviction for a lesser included offense, a request to charge a lesser included offense is proper only when the evidence could support a reasonable inference that the defendant committed the lesser rather than the greater offense. *Casey v. State*, — S.C. —, 409 S.E. (2d) 391 (1991). A mere contention that the jury might accept the State's evidence in part and reject it in part will not support a request for the lesser charge. *State v. Funchess*, 267 S.C. 427, 229 S.E. (2d) 331 (1976).

In this case, there was no evidence that Morris involuntarily pulled his gun and shot Burkhalter. The forensic psychiatrist who testified stated a person with frontal lobe brain damage could have an impaired ability to control his *emotional* reaction to a stimulus. He stated, however, that he had not evaluated Morris with regard to the specific *acts* involved in the Burkhalter shooting.

Thus, even if the jury were persuaded that Morris reasonably feared Burkhalter was going to strike him again, or that Morris's ability to control his emotional response was impaired by frontal lobe brain damage, the evidence still supported a finding that Morris intentionally pulled the pistol and fired it at Burkhalter. Whether the shooting was excusable in the circumstances (self defense) or was committed in the heat of passion upon a sufficient provocation (voluntary manslaughter) was for the jury to determine, and the judge so charged them. He committed no error when he refused, in addition, to charge involuntary manslaughter. If the State failed to prove an intentional shooting to the jury's satisfaction, it would simply lose its case.

## II.

During the State's case, a police detective testified that in a statement given after the shooting, Morris said Burkhalter ordered him to leave, because "he didn't want drug dealers or dope dealers or thieves on his property." Defense counsel made no objection on the record to this testimony.[1] Shortly thereafter the same counsel stated to the court,

---

[1] Shortly before the detective gave this testimony, the judge and the lawyers held an off the record bench conference. At the end of the bench conference the following colloquy took place on the record:

MR. LANIER [Morris's lawyer]: YOUR HONOR, FOR THE RECORD ON THE BENCH CONFERENCE, THERE ARE CERTAIN ELEMENTS.
THE COURT: YES, SIR.
MR. LANIER: I WOULD JUST LIKE THE RECORD MARKED.
THE COURT: YES, SIR, THE EXCEPTION IS CONTINUING.

The State then resumed questioning the detective. The record does not show the nature of the continuing exception or that it related to the question and answer now challenged on appeal. An exception not made on the record and for which no specific ground is stated provides no basis for appellate review. *Campbell v. Bi-Lo, Inc.*, 301 S.C. 448, 392 S.E. (2d) 477 (Ct. App. 1990).

"Your Honor, I don't mind him [the detective] talking about what my client [Morris] said in his statement." Counsel then apparently went on to object to the detective's testifying about the questions he put to Morris while taking the statement.

Another State's witness, the jailer who booked Morris, testified that during the booking he "asked him what did he do now to be back in jail." Defense counsel objected to the testimony and moved for a mistrial. Counsel argued in support of the motion that a "seed" had been planted in the jury's mind by the jailer's testimony and the earlier "dope dealer and thieves" testimony of the detective. The State thereupon agreed to stipulate that Morris had no prior criminal record. The judge replied he would instruct the jury to disregard the jailer's statement and also instruct them that Morris had no prior criminal record. Defense counsel responded, "If that is your ruling, I accept it."

The judge then instructed the jailer not to make any statement that "intimates in any way, shape or form that this young man was in any prior criminal trouble or any trouble whatsoever or that he was out at the jail." When the jury returned, he instructed them to disregard the jailer's last statement and emphasized it would be improper for them to consider or discuss it. He also told them the State stipulated that "the defendant has absolutely no prior criminal record whatsoever, period." Defense counsel did not object to the sufficiency of this curative instruction nor renew the motion for a mistrial.

On appeal, Morris argues that the judge improperly allowed the State to attack his character through the introduction of this evidence suggesting prior bad acts.

This Court cannot consider issues raised for the first time on appeal. *State v. Laster*, 261 S.C. 521, 201 S.E. (2d) 241 (1973). Moreover, we are confined to the record in reviewing a judgment of the circuit court for error. *Cartee v. Lesley*, 286 S.C. 249, 333 S.E. (2d) 341 (Ct. App. 1985). Where an objection and the ground therefor is not stated in the record, there is no basis for appellate review. *Id.; Campbell v. Bi-Lo, Inc.*, 301 S.C. 448, 392 S.E. (2d) 477 (Ct. App. 1990). If a party fails to make a proper contemporaneous objection to the admission of evidence, he cannot later raise the issue by a motion for mistrial. *State v. Atchison*, 268 S.C. 588, 235 S.E. (2d) 294 (1977). Finally, if the court sustains a timely objection to

testimony and gives the jury a curative instruction to disregard the testimony, the error is deemed to be cured. *State v. Craig*, 267 S.C. 262, 227 S.E. (2d) 306 (1976); *State v. Hale*, 284 S.C. 348, 326 S.E. (2d) 418 (Ct. App. 1985). No issue is preserved for appellate review if the objecting party accepts the judge's ruling and does not contemporaneously make an additional objection to the sufficiency of the curative charge or move for a mistrial. *State v. Craig, supra; McElveen v. Ferre*, 299 S.C. 377, 385 S.E. (2d) 39 (Ct. App. 1989).

In this case, counsel placed no objection on the record regarding the evidence of Morris's "dope dealers or thieves" statement. Indeed, he affirmatively stated to the judge that he "didn't mind" the witness recounting what Morris said in his pretrial statement. Similarly, after the judge indicated he would deny the motion for a mistrial based on the jailer's statement that Morris had been to the jail before and instead give the jury a curative instruction, counsel did not object to the sufficiency of the curative charge, but affirmatively stated, "If that is your ruling, I accept it." Therefore, these issues are not presented for appellate review.

### III.

Finally, Morris contends his privilege against compelled self incrimination was violated by the admission of a statement he made to the jailer while he was being booked. The jailer testified that during a "friendly" conversation while he booked Morris, he asked him why he was there. According to the jailer, Morris

> said he shot—well, he first replied did I know Mr. Burkhalter. I said I know of him. Then he said, "Well I shot him." I said, I told him, "I think you are in a heap of trouble, ain't you?" He said, "if I would have had my .357, I would have killed him for sure." I asked him was he dead, and he said, "No, but if I had my .357, I know I would have killed him."

Morris argues that this testimony should not have been admitted because the jailer did not give him a *Miranda* warning before talking with him.

Within minutes after Burkhalter was shot, a deputy sheriff went to Morris's house to investigate the incident. Burkhalter

had already identified Morris as the one who shot him. At Morris's house, the officer gave him a *Miranda* warning. Morris acknowledged that he understood his rights. He then told the deputy he shot Burkhalter. The deputy arrested him and took him to the police station.

At the police station, a detective took custody of Morris. He also gave Morris a *Miranda* warning. Morris signed a statement acknowledging receipt of the warning and waiving his *Miranda* rights. He then gave a statement admitting that he shot Burkhalter.

Immediately after Morris gave the statement, he was taken to the jailer to be booked. The jailer testified that as he booked Morris he engaged in "normal conversation" with him. He was not trying to interrogate Morris or elicit evidence from him.

The test of admissibility of an accused's statement against him is voluntariness. If the accused is advised of his *Miranda* rights and nevertheless chooses to make a statement, the burden of proof is still with the State to show that he knowingly and voluntarily waived his right to remain silent and that the statement was freely and voluntarily made. *State v. Rochester*, 301 S.C. 196, 391 S.E. (2d) 244 (1990). However, once a voluntary waiver of *Miranda* rights is made, that waiver continues until the accused either indicates he wants to revoke the waiver and remain silent or circumstances establish that his will has been overborne and his capacity for self determination critically impaired. *Id.*

In this case, the trial judge found that Morris knew of his *Miranda* rights and freely and voluntarily waived them, not once, but twice, shortly before the conversation with the jailer. On appeal, the conclusion of the trial judge on issues of fact as to the voluntariness of a statement will not be disturbed unless so manifestly erroneous as to show an abuse of discretion. *Id.* The circumstances surrounding the conversation with the jailer support the judge's determination that Morris made a voluntary remark after he had been freshly advised of his *Miranda* rights which he knowingly and voluntarily waived. We find no abuse of discretion.

Affirmed.

SHAW, J., and LITTLEJOHN, Acting Judge, concur.