504 S.E.2d 307

**Willie Lee DOUGLAS, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

**No. 24828.**

Supreme Court of South Carolina.

Submitted Dec. 17, 1997.

Decided Aug. 10, 1998.

Chief Attorney Daniel T. Stacey and Assistant Appellate Defender Lisa T. Gregory, of South Carolina Office of Appellate Defense, Columbia, for petitioner.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Teresa A. Knox, Columbia, for respondent.

## ON WRIT OF CERTIORARI

TOAL, Justice:

Willie Lee Douglas and co-defendant Maurice Pickens were involved in a shooting incident outside a Waffle House in Florence, South Carolina. Four people were shot; two died. Douglas and Pickens were indicted for the shooting. In this post-conviction relief action, we granted a writ of certiorari to review petitioner's direct appeal issues pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974). We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

Early in the morning on February 13, 1994, a crowd gathered in an area next to a Waffle House in Florence; Douglas and Pickens were among those in the crowd. An argument erupted between the defendants and others in the crowd. There was testimony that a group of people rushed the defendants, and in self-defense, Douglas and Pickens began shooting.

Douglas and Pickens were tried together for the shooting. They were convicted of two counts of voluntary manslaughter and possession of a firearm during the commission of a crime of violence. Both Douglas and Pickens appealed. Douglas filed an untimely notice of intent to appeal which we dismissed on January 25, 1994 for lack of jurisdiction. Pickens made a timely appeal which we addressed in *State v. Pickens*, 320 S.C.

528, 466 S.E.2d 364 (1996). We reversed Pickens's conviction and remanded for a new trial.

Meanwhile, on May 19, 1995, Douglas filed an application for post-conviction relief ("PCR"). In its order dated March 21, 1996, the PCR court found that Douglas did not knowingly and intelligently waive his right to a direct appeal and was entitled to *White v. State*[1] review. As a result, Douglas petitioned for a writ of certiorari, which we granted to consider the following issues:

1. Did the trial court err in refusing to give a curative instruction after the solicitor commented on the defendants' failure to call witnesses?

2. Did the trial court err in refusing a request to charge that Douglas was not limited to the degree or quantity of attacking opposing forces?

3. Did the trial court err in denying a request to charge defense of others?

4. Did the trial court err in refusing a request to instruct the jury on involuntary manslaughter?

## LAW/ANALYSIS

### A. COMMENT ON FAILURE TO CALL WITNESSES

■ Douglas argues that the trial court erred in refusing to give a curative instruction after the solicitor referred to Douglas's failure to call witnesses. We disagree.

In closing arguments, the solicitor stated, "One thing they short me on is I didn't put these officers up. Well, I tell you one thing, they can call witnesses just like I can. And [Douglas] did call witnesses." Douglas objected, and Pickens joined in the motion. Inasmuch as Pickens had elected not to testify or call any witnesses, the trial judge ruled that he was entitled to protection under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[2] However, the trial judge

---

**1.** 263 S.C. 110, 208 S.E.2d 35 (1974).

**2.** Pursuant to *Doyle,* the State cannot comment on an accused's right to remain silent.

refused to give a curative instruction. Douglas argues this was reversible error.

Although Douglas did not testify in his own defense, he did call several witnesses in his behalf. Douglas contends the solicitor's statement was an attempt to draw an adverse inference from Douglas's failure to call a particular witness. At the outset, it should be noted that it is a real stretch to interpret the solicitor's remarks as a negative comment of any kind regarding Douglas. Nevertheless, the jury should ordinarily be instructed not to draw inferences from the neglect of a defendant to call witnesses. *See* 29 Am.Jur.2d *Evidence* § 247 (1994). Moreover, pursuant to *State v. Posey,* 269 S.C. 500, 238 S.E.2d 176 (1977), it is never permissible for the prosecutor to suggest to the jury that it draw an adverse inference when the defendant fails to present any evidence at trial, since the defendant may let the case go to the jury on the basis that the prosecution did not meet its burden of proof.

However, where, as here, the defendant presents evidence at trial, and "there are witnesses, seemingly accessible to the accused, or under his control, who are or should be cognizant of material and relevant facts and competent to testify thereto, and whose testimony would presumably aid him or substantiate his story if it were true, it is not improper for the prosecuting attorney to comment upon [defendant's] failure to produce them." *State v. Shackelford,* 228 S.C. 9, 11, 88 S.E.2d 778, 779 (1955). In *State v. Bamberg,* 270 S.C. 77, 240 S.E.2d 639 (1977), the solicitor argued to the jury that it should draw an adverse inference from the defendants' failure to call certain witnesses. The defendant argued that the trial court erred in allowing the solicitor to make the argument. We disagreed, noting that the rule in *Posey* applied only in cases where a defendant failed to present any evidence at all. In *Bamberg,* the defendants had produced other witnesses in their behalf. As such, we found the solicitor's argument was proper.

In this case, Douglas also produced other witnesses in his behalf. Additionally, the trial court extensively charged the jury that the State had the burden of proof and the defendants had no duty to prove their innocence. Therefore, we find the

trial court's failure to give a curative instruction was not error.[3]

## B. DEGREE OF FORCE IN SELF-DEFENSE

█ Douglas argues that the trial court erred in refusing to charge that Douglas was not limited to the degree or quantity of attacking opposing forces. We disagree.

Douglas's requested charge provided:

I charge you that the defendant, if without fault, has the right to use such necessary force as required for his complete protection from loss of life or serious bodily harm and cannot be limited to the degree or quantity of attacking opposing force. *State v. Campbell*, 111 S.C. 112, 113, 96 S.E. 543, 544 (1918).

In *Campbell*, the defendant shot and killed a man who came at him with a bottle. The defendant claimed self-defense. The trial court charged the jury that under self-defense the defendant was limited to using as much force as was used against him. We found the trial court had erred in giving the charge, stating: "The defendant was not limited to use the same force and no more than that with which he was threatened. The defendant, if without fault, had the right to use as much force as required for his complete protection from loss of life or serious bodily harm, and could not be limited to the degree or quantity of attacking opposing force." *State v. Campbell*, 111 S.C. at 113, 96 S.E. at 544.

In this case, after instructing the jury on the elements of self-defense, the trial court gave the following jury charge:

[I]f the defendant was justified in using force and firing the first shot, he is justified in continuing to shoot until it appears that any danger to his life and body has ceased.

\*     \*     \*     \*     \*     \*

The law in this state is that the defendant does not have to wait until the deceased gets the drop on him or the de-

---

**3.** In *State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364, we found that the trial court's failure to give a curative instruction was reversible error. However, the instant case is distinguishable from *Pickens* because Douglas did present evidence at trial, while Pickens did not.

ceased begins to shoot him. He has the right to act upon the law of self-preservation and prevent this.

We find that the trial court's charge was consistent with the dictates of *Campbell.* Therefore, the trial court's refusal to give Douglas's requested charge was not error. *See State v. Hicks,* 305 S.C. 277, 407 S.E.2d 907 (1991) (although charges requested by a party may be a correct statement of law, a judge does not err by refusing to deliver the charges verbatim).

## C. DEFENSE OF OTHERS

■ Douglas argues that the trial court erred in denying a request to charge "defense of others." We disagree.

■ Under the theory of defense of others, one is not guilty of taking the life of an assailant who assaults a friend, relative, or bystander if that friend, relative, or bystander would likewise have the right to take the life of the assailant in self-defense. *State v. Long,* 325 S.C. 59, 480 S.E.2d 62 (1997). The law to be charged is determined from the evidence presented at trial. *State v. Gourdine,* 322 S.C. 396, 472 S.E.2d 241 (1996). Consequently, in order for the trial court to give a defense of others charge, there must be some evidence adduced at trial that the defendant was indeed lawfully defending others. In this case, the evidence was insufficient to warrant such a charge.

■ Douglas further argues that since the jury was charged with "the hand of one is the hand of all" theory, it should have also been charged with defense of others. Douglas reasons that it would not be fair for the State to have the benefit of a charge on concerted action, without the defendant also having the benefit of the reciprocal charge on defense of others. We disagree. Evidence that supports a charge on concerted action does not automatically warrant a defense of others charge. There must be some other evidence to support the defense of others theory. *See Bozeman v. State,* 307 S.C. 172, 414 S.E.2d 144 (1992) (finding the record supported a self-defense charge rather than a defense of others charge). Thus, in this case, the trial court did not err in refusing to give the requested charge.

## D.  INVOLUNTARY MANSLAUGHTER

Douglas argues that the trial court erred in refusing to instruct the jury on involuntary manslaughter. We disagree.

Involuntary manslaughter is (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others. *Bozeman v. State*, 307 S.C. 172, 414 S.E.2d 144. Douglas argues that an involuntary manslaughter charge should have been given because he acted lawfully, but recklessly, in defending himself.

Douglas admits he intentionally shot the gun into the crowd in self-defense. In *State v. McLaughlin*, 208 S.C. 462, 38 S.E.2d 492 (1946), the defendant also argued that he intentionally shot a gun while defending himself from an attack. We found that an involuntary manslaughter charge was warranted since there "was sufficient evidence to go to the jury as to whether or not [defendant] was negligent in firing as he did at random in the darkness knowing that others were about." *State v. McLaughlin*, 208 S.C. at 466, 38 S.E.2d at 493. However, in *Pickens*, we overruled *McLaughlin* as to the evidence needed to warrant an involuntary manslaughter charge. *Pickens*, 320 S.C. at 531 n. 3, 466 S.E.2d at 366 n. 3. In *Pickens*, we relied upon two modern South Carolina cases discussing this issue: *State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994) (holding that a defendant who acted intentionally in wielding a knife in self-defense was not entitled to an involuntary manslaughter charge) and *State v. Morris*, 307 S.C. 480, 415 S.E.2d 819 (Ct.App.1991) (finding an involuntary manslaughter charge not warranted because evidence showed an intentional shooting). We reasoned that involuntary manslaughter is at its core an unintentional killing. Thus, where a defendant intentionally arms himself and shoots into a crowd, as Douglas did here, he is not entitled to an involuntary manslaughter charge.[4] *Accord Lamon v. State*, 260 Ga. 119, 390 S.E.2d 582 (1990); *People v. DeMumbree*, 98 Ill.App.3d 22,

---

4. A claim of imperfect self-defense would also be unavailing because it has no application to involuntary manslaughter. *See* William Shepard McAninch, *The Criminal Law of South Carolina* 163 (1996).

53 Ill.Dec. 660, 424 N.E.2d 73 (1981); *State v. Moore,* 75 N.C.App. 543, 331 S.E.2d 251 (1985).

Thus, pursuant to *Pickens,* the evidence in this case would not support a charge of involuntary manslaughter. The record firmly establishes that Douglas armed himself with a gun and intentionally fired it into the crowd.

#### CONCLUSION

For the foregoing reasons, the trial court is **AFFIRMED** on all issues.

FINNEY, C.J., MOORE, WALLER and BURNETT, JJ., concur.