744 S.E.2d 607

The STATE, Respondent

v.

Christopher MURRAY, Appellant.

Appellate Case No. 2011–192046.

No. 5150.

Court of Appeals of South Carolina.

Heard May 7, 2013.
Decided June 26, 2013.

Appellate Defender Breen Richard Stevens, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor William Walter Wilkins III, of Greenville, for Respondent.

FEW, C.J.

A jury found Christopher Murray guilty of murder for the shooting death of James Gibson. Murray argues the trial court erred by not charging the jury on the lesser-included offense of involuntary manslaughter. We affirm the trial court's decision not to charge involuntary manslaughter because there is no evidence the shooting was unintentional.

## I. Factual and Procedural History

On the evening of January 18, 2010, Murray and his girl-friend Faye Brissey drove to Gibson's residence. According to Faye's testimony, she remained in the car while Murray walked to Gibson's front door and knocked. When Gibson opened the door, Murray went inside. "Not even a second" after he entered, Faye heard three gun shots fired "back to back."[1] Murray fled the residence, got back into the car with Faye, and sped away. He told Faye a fight occurred inside the residence and that he killed Gibson.

The State introduced a written statement from Faye's cousin, Matt Brissey, who did not witness the incident but based the statement on what Murray told him afterward:

[Murray] knocked on the door and [Gibson] opened the door and hit [Murray] in the mouth.[2] And [Murray] jerked the door open and tried to kick [Gibson]. [Gibson] grabbed [Murray]'s foot and pulled him in, and then they started

---

1. Gibson's neighbor corroborated Faye's story and testified the gun shots "were in correct measurement from each other. They were exact.... Not like firecrackers ... [that] go off at different intervals. They were exactly pop, pop, pop."

2. Matt testified at trial that Gibson did not strike Murray, but instead the door hit Murray in the mouth when Gibson opened it.

wrestling in the living room. And [the] first shot hit the wall, and then the second one hit the ceiling, and the third one he put the gun ... to his chest and shot him.

Matt also testified, and during his testimony stated Murray told him "there was a struggle, that he was trying to shoot [Gibson]. He shot one in his wall, one [in] the couch and ... he rolled [Gibson] on his back when they was wrestling and shot him in his chest." An investigation by police confirmed there was a bullet hole in the living room floor beneath the couch and another in the wall near the ceiling.

Murray did not testify at trial, but his videotaped interview with two police detectives was shown to the jury. In this interview, Murray stated that after Gibson attacked him in the doorway, a fight took place inside the residence. Murray claimed the gun was on his waist when he arrived, and he did not "remember taking the gun off [his] waist." He stated, "The only thing I can think of that might have happened right now is when I was tussling, it fell out." Murray went on to explain,

I think the gun fell and that's how I got it in my hand. So it probably went off once or twice accidental. And that's whenever I pulled it on [Gibson].

The video showed one of the detectives prompting Murray to "show [him] what happened." Murray then acted out the fight with one of the detectives, who, following Murray's direction, portrayed the actions of Gibson. The demonstration showed Murray and Gibson standing, with Gibson "leaned over [Murray]," and Murray bent under Gibson's body with his head against Gibson's chest. At that point in the demonstration, Murray said, "I think [the gun] dropped on the floor ... while he was over me." Murray demonstrated the gun falling to the floor between them, and then explained, "I went down and got it to keep him from getting to it." Murray gave no indication that Gibson also reached for the gun. As Murray stood up from the demonstration to speak directly to the detective, he said "and from there it went off probably two times.... It just went off, and that's whenever I pulled it up." Murray then demonstrated the manner in which he "pulled [the gun] up" to Gibson's chest and explained, "[Gibson] was still on me." When the detective told Murray to "put [the gun] wherever you think it was" when he shot Gibson, Murray

held his hand in the shape of a gun—pointed at the detective's chest—and said, "somewhere between his waist and up in here," demonstrating Gibson's upper chest.

Murray asked the court to instruct the jury on self-defense and voluntary manslaughter—which the court charged—and also involuntary manslaughter. Murray argued the shooting was not intentional because the gun fired during a struggle over the weapon, and the gunshots were accidental because they were "all over the place." In denying the request to charge involuntary manslaughter, the court stated, "I don't remember any testimony—there was testimony, as I can remember, about a struggle going on, but I never really heard anything about a fight over a weapon." The jury found Murray guilty of murder, and the court sentenced him to forty years in prison.

## II. Involuntary Manslaughter

Involuntary manslaughter is the unintentional killing of another without malice while (1) engaged in an unlawful activity not naturally tending to cause death or great bodily harm or (2) engaged in a lawful activity with reckless disregard for the safety of others. *State v. Smith,* 391 S.C. 408, 414, 706 S.E.2d 12, 15 (2011). To warrant a jury charge on involuntary manslaughter, there must be some evidence the killing was unintentional. *See Douglas v. State,* 332 S.C. 67, 74, 504 S.E.2d 307, 310 (1998) (stating "involuntary manslaughter is at its core an unintentional killing"); *State v. Gibson,* 390 S.C. 347, 357, 701 S.E.2d 766, 771 (Ct.App.2010) (stating "the essence of involuntary manslaughter is the involuntary nature of the killing"). In this case, the evidence conclusively demonstrates Murray killed Gibson intentionally.

In his interview, Murray claimed the gun "probably went off once or twice accidental." On appeal, he argues this is supported by the random location of the bullet holes—one in the floor beneath the couch and another in the wall near the ceiling. Even if the first two shots were unintentional, however, there is no evidence Murray did not intend to fire the third shot. In fact, Murray stated in his interview that after he grabbed the gun and the first two shots discharged, he "pulled [the gun] on [Gibson]" and fired the third shot, which hit Gibson "[a]nywhere from his waist up to about his solarplex."

Murray's statements to Matt also demonstrate Murray intentionally fired the third shot: "[The] first shot hit the wall, and then the second one hit the ceiling, and the third one [I] put the gun ... to his chest and shot him." Thus, even if a jury could reasonably conclude Murray accidentally fired the first two shots, there is no evidence the third shot, resulting from Murray "put[ting] the gun ... to [Gibson's] chest" and shooting, was unintentional. Because there is no evidence the killing was unintentional, the trial court correctly refused to charge involuntary manslaughter. *See State v. Tucker,* 324 S.C. 155, 171, 478 S.E.2d 260, 268 (1996) (holding involuntary manslaughter charge improper because "[e]ven if the first shooting was unintentional, the same cannot be said of the second"); *State v. Thompson,* 278 S.C. 1, 7, 292 S.E.2d 581, 585 (1982) (holding involuntary manslaughter charge not warranted "when at least one of the two shots was fired deliberately"), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

Murray argues, however, there is evidence Gibson was accidentally shot during a struggle for control of the gun. Murray cites *State v. Light,* 378 S.C. 641, 664 S.E.2d 465 (2008), and *Tisdale v. State,* 378 S.C. 122, 662 S.E.2d 410 (2008) for the proposition that "evidence of a struggle between the defendant and the victim over a weapon supports submission of an involuntary manslaughter charge." 378 S.C. at 125, 662 S.E.2d at 412. Like this case, however, *Light* and *Tisdale* turn on the existence or non-existence of evidence of an unintentional killing. In those cases, and in other cases like them, our courts held a struggle over a gun warrants a charge on involuntary manslaughter because, on the facts before them, the finding that such a struggle occurred is evidence the shooting was unintentional. *See Light,* 378 S.C. at 646, 648–49, 664 S.E.2d at 467, 468–69 (holding involuntary manslaughter charge appropriate where defendant attempted to take gun from victim, and gun "went off" immediately after defendant "jerked it away from [the victim]"); *Tisdale,* 378 S.C. at 124, 126, 662 S.E.2d at 412 (holding involuntary manslaughter charge warranted where defendant and victim fought for gun, and it "went off" while still in victim's hands). For example, in *State v. Brayboy,* 387 S.C. 174, 182, 691 S.E.2d 482, 486 (Ct.App.2010), the victim pulled a gun on the defendant. In

response, the defendant pushed the victim, causing the gun to fall to the ground. *Id.* Both men reached for the gun, but the defendant grabbed it first and picked it up. *Id.* When he did, the gun fired, killing the victim. *Id.* The defendant claimed he did not "even remember the gun" at the time it discharged. *Id.* This court held the defendant was entitled to a charge of involuntary manslaughter because on those facts the struggle for control of the gun was evidence that the defendant did not intentionally pull the trigger. *Id.*

In this case, however, there is no evidence the struggle was for control of the gun. Murray's gun was in his waistband when he arrived, but there is no evidence Gibson knew Murray had it. Although Murray stated he "got [the gun] to keep [Gibson] from getting to it," there is no evidence Gibson knew the gun had fallen, much less that Gibson also tried to grab it. This case is distinguishable from *Light, Tisdale,* and *Brayboy,* therefore, because the facts provide no basis upon which a jury could find the third shot was unintentionally fired during a struggle over the gun. In addition, Murray admitted he "pulled [the gun] on [Gibson]" and fired the third shot intentionally.[3] On these facts, we hold the trial court correctly refused to charge involuntary manslaughter.

### III. Conclusion

For the reasons set forth above, the trial court's refusal to charge involuntary manslaughter is **AFFIRMED.**

GEATHERS and LOCKEMY, JJ., concur.

---

3. *See also Douglas,* 332 S.C. at 74, 504 S.E.2d at 310–11 (finding no involuntary manslaughter charge warranted where defendant admitted he intentionally fired a gun into a crowd); *State v. Pickens,* 320 S.C. 528, 531–32, 466 S.E.2d 364, 366–67 (1996) (holding defendant not entitled to charge on involuntary manslaughter because defendant admitted intentionally shooting the gun recklessly in self-defense); *Gibson,* 390 S.C. at 358, 701 S.E.2d at 772 (holding trial court properly refused to charge on involuntary manslaughter because defendant admitted he intentionally fired his weapon); *State v. Morris,* 307 S.C. 480, 484, 415 S.E.2d 819, 821–22 (Ct.App.1991) (holding involuntary manslaughter charge not warranted because evidence showed an intentional shooting).