581 S.E.2d 154

**Clifton E. HARRIS, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 25646.**

Supreme Court of South Carolina.

Submitted Nov. 21, 2002.

Decided May 5, 2003.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General William Bryan Dukes, all of Columbia, for petitioner.

Assistant Appellate Defender Tara S. Taggart, of S.C. Office of Appellate Defense, of Columbia, for respondent.

Chief Justice TOAL:

Petitioner asks this court to review the post-conviction relief ("PCR") judge's grant of Respondent's PCR application on the grounds that Respondent's trial counsel failed to object to the trial judge's refusal to charge voluntary manslaughter.

### Factual/Procedural Background

On August 3, 1979, Harold Medlin ("Harold") drove over to Dorothy Roberts' ("Dorothy") home to pick up a refrigerator. Harold's ex-wife, Linda Jean Medlin ("Linda Jean"), was also at Dorothy's house. Harold pulled his pick-up truck underneath a carport where the refrigerator was located, and Linda Jean came over and was trying to help him place the refrigerator in the truck bed when Linda Jean's boyfriend Clifton Harris ("Clifton") pulled up in his station wagon.

Harold said, "You got here just in time to help me load the refrigerator," and Clifton helped him load the refrigerator. Harold testified that despite Linda Jean and Clifton's adulterous affair, which led to his divorce from Linda Jean, he maintained a friendly relationship with Clifton.[1] Clifton had

---

1. While Clifton's willingness to help load the refrigerator supports Harold's testimony that Clifton and Harold were friendly to each other,

been drinking most of the day and was taking prescription painkillers that a doctor prescribed after Clifton hurt his back in a car accident. Clifton then asked Linda Jean to go out to dinner with him, but she responded that she could not because she had previously arranged to take her sons out to dinner.

Harold and a neighbor across the street, Lillie Long,[2] testified that Clifton and Linda Jean got into a scuffle as Clifton tried to force her into the back seat of his car. Harold said, "Clifton, don't start hitting her like that." Linda Jean resisted being forced into the car and scampered away from him in the direction of Harold. Clifton then grabbed an automatic .22 rifle from the car and fired three shots in the direction of Linda Jean and Harold. Clifton testified that Harold had picked up a steel refrigerator grate and was heading in his direction, so he fired three warning shots to keep Harold from advancing. Harold testified that he did not pick up a grate nor advance towards Clifton.

Two of the shots hit the ceiling of the carport and the third hit Linda Jean in her back, and she fell to the ground. Harold testified that Clifton had raised the rifle to his shoulder before firing the shots, and Clifton testified that he shot the gun from his waist.

Harold then ran out of the carport towards the back yard, and Clifton began shooting at him. Clifton shot him four times before he fell. Harold "played dead," and Clifton approached him, placed the barrel of the rifle on his throat, and shot him. Clifton ran towards his car but turned around once more and shot Harold in the left hip. Linda Jean was found dead by the police and paramedics, and miraculously, Harold survived.

Clifton pled guilty to assault and battery with intent to kill (ABIK) Harold and was convicted of the murder of Linda Jean, which was affirmed on direct appeal. *State v. Harris,* 275 S.C. 463, 272 S.E.2d 636 (1980). The trial court granted

---

both Harold and Clifton testified that they had an altercation one-year earlier that involved guns. Harold filed charges against Clifton, but Linda Jean convinced him to dismiss them.

**2.** Lillie Long died after the first trial and before the second trial, so the State put forth her testimony from the original trial.

Clifton's PCR on the murder conviction, and this Court denied certiorari. On retrial, Clifton was convicted of murder and received a sentence of life imprisonment, and the conviction and sentence were affirmed on direct appeal. Op. No. 98–MO–002 (S.C. Sup.Ct. filed January 5, 1998). Clifton then applied for and was granted PCR again. The State now petitions for a writ of certiorari to review the Circuit Court's grant of Clifton's PCR application.

The Court granted certiorari on the following issue:

Did the PCR judge err in finding that Clifton's trial counsel was ineffective in not objecting to the trial judge's failure to charge voluntary manslaughter?

## Law/Analysis

■ The State argues that the PCR judge erred in finding that Clifton's trial counsel was ineffective in failing to object to the trial judge's refusal to charge voluntary manslaughter.[3] We agree.

■ This Court will sustain the PCR judge's fact-finding concerning ineffective legal counsel if there is any probative evidence in the record that supports those findings. *Patrick v. State*, 349 S.C. 203, 207, 562 S.E.2d 609, 611 (2002). In order to prove ineffective counsel, the applicant must show that counsel's performance was deficient according to reasonable professional norms and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S.

---

3. The PCR judge orally granted Clifton's PCR application for counsel's failure to request a charge on voluntary manslaughter and self-defense. The written order, prepared by Clifton's counsel, failed to specifically address the self-defense charge. Under section 6, which addresses voluntary manslaughter, the order states, "Further, the intended object of the warning shots was the estranged husband of the victim, there was testimony that he was approaching [Clifton] with a deadly weapon at the time of the shooting, and there was evidence of prior difficulties between the parties." In our opinion, this reference to self-defense does not constitute a specific ruling that self-defense should have been charged. Clifton's counsel should have filed a Rule 59(e) motion to amend the judgment to include a finding on the lack of a self-defense charge. Since no motion was filed, we believe that the self-defense issue was not preserved. *Pruitt v. State*, 310 S.C. 254, 256, 423 S.E.2d 127, 128 (1992) (This Court held that counsel has an obligation to meticulously review the PCR order and file a Rule 59(e) motion if it does not address the merits of the issues).

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Legge v. State,* 349 S.C. 222, 224, 562 S.E.2d 618, 619–620 (2002).

▮▮▮ "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Locklair,* 341 S.C. 352, 360, 535 S.E.2d 420, 424 (2000). Sufficient provocation necessary to justify a voluntary manslaughter charge *must come from the victim and not be transferred from a third-party to the victim. Id.* at 362–363, 535 S.E.2d at 425; *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996).

Clifton testified that when he arrived at Dorothy's house,[4] he asked Linda Jean to go out to dinner with him, and she replied, "No, I'm not going ... You're drunk." Clifton testified that a scuffle did not result from Linda Jean's unwillingness to go out to dinner. He said that when she freed herself from him after refusing to go in his car, she ran in the direction of Harold, who was holding a refrigerator grate as if to threaten Clifton. Clifton testified that he then fired three "wild shots" in the direction of Harold to keep Harold from advancing with the refrigerator grate, and Linda Jean ran in between the two men and was hit by one of the bullets.[5]

Since Clifton put forth no evidence that Linda Jean provoked him, he cannot prove his entitlement to a charge on voluntary manslaughter. Clifton testified that he was provoked by Harold, who was not the murder victim.[6] Therefore, Clifton cannot allege that the trial counsel's failure to object to the lack of a voluntary manslaughter charge would have prejudiced his defense since he was not provoked by the victim. *Locklair.*

▮▮▮ In our opinion, this PCR review for failure to give a *voluntary* manslaughter charge has been mislabeled. We believe the PCR court intended to grant PCR based on a

---

4. Dorothy was Clifton's sister.

5. Harold and Lillie Long's testimonial account of the "scuffle" between Clifton and Linda Jean differs with Clifton's account. Harold testified that Clifton had an arm-lock on Linda Jean. Lillie Long testified that Clifton and Linda Jean were "struggling."

6. Although Harold became a victim after Clifton shot Linda Jean, he was not the murder victim.

failure to charge *involuntary* manslaughter,[7] not voluntary manslaughter.

At trial, Clifton's trial counsel, the solicitor and the trial judge had a lengthy discussion about what the judge would charge to the jury. The parties discussed the possibility of charging the jury with murder, self-defense and involuntary manslaughter. The court recessed and returned the following morning and the discussion continued. Clifton's attorney said: "Judge, we were talking yesterday about the charge and we had a lot of discussions. I wanted to put on the record that I requested an accidental in relating to a self-defense, and involuntary in addition to murder and you are only going to charge murder? Correct?" The judge responded, "I'm charging murder and that's all." Clifton's attorney failed to object to the trial judge's failure to charge involuntary manslaughter.

At the PCR hearing, we believe that the court accidentally associated the term "voluntary manslaughter" with the law of involuntary manslaughter. In support of the her argument that involuntary manslaughter should not have been charged, State Attorney Barbara Tiffen cited cases involving dangerous weapons where involuntary manslaughter was not charged. When the PCR judge made his finding, he said:

> Now, this court is concerned about the failure of trial counsel to protect the record and object to the court's not charging voluntary manslaughter and not charging self-defense. When Mr. Harris took the stand, he put his credibility into evidence. The jury could have concluded that his actions in firing the weapon, although counsel for the State has cited some cases that seem to be contrary, under the facts of this case, his actions could have been considered so reckless and so much in disregard for the life and safety of other persons to have constituted an act of

---

7. "Involuntary manslaughter is (1) the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm; or (2) the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others." *State v. Tyler,* 348 S.C. 526, 529, 560 S.E.2d 888, 889 (2002); *State v. Chatman,* 336 S.C. 149, 519 S.E.2d 100 (1999).

voluntary manslaughter when the death of another person was caused.

Here, the PCR judge is discussing the standard for involuntary manslaughter, but mistakenly called it voluntary manslaughter. Clifton's attorney wrote the order, which also only referred to voluntary manslaughter.

This case is being reviewed on the issue of voluntary manslaughter based on the PCR court confusing voluntary and involuntary manslaughter. The quote above illustrates that the PCR judge was referring to the law of involuntary manslaughter but calling it "voluntary manslaughter."

 Regardless, even if the involuntary manslaughter issue was presented for review, we do not believe that Clifton's counsel's failure to object when involuntary manslaughter was not charged was prejudicial to Clifton's defense. This Court has stated, "[t]here is no error in the refusal to charge the law of involuntary manslaughter when the defendant admitted intentionally firing the gun, but claimed only he meant to shoot over the victim's head." *State v. Cooney,* 320 S.C. 107, 112, 463 S.E.2d 597, 600 (1995); *Bozeman v. State,* 307 S.C. 172, 414 S.E.2d 144 (1992). Since Clifton admitted that he intentionally fired warning shots in the direction of Harold, he was not entitled to the involuntary manslaughter charge, and thus could not have been prejudiced by the Court's failure to charge it.

## Conclusion

Since we hold that Clifton's defense was not prejudiced by his counsel's failure to object to the trial judge's refusal to charge voluntary or involuntary manslaughter, we **REVERSE** the PCR court's granting of his PCR application.

WALLER and BURNETT, JJ., concur. PLEICONES, J., concurring in result only. MOORE, J., not participating.