# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Quayshaun Xzander Clark, Appellant.

Appellate Case No. 2022-000962

---

Appeal From Lexington County
Debra R. McCaslin, Circuit Court Judge

---

Opinion No. 6123
Heard April 10, 2025 – Filed September 24, 2025

---

### AFFIRMED

---

Appellate Defender Gary Howard Johnson, II, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody J. Brown, and Senior
Assistant Attorney General J. Anthony Mabry, all of
Columbia; and Samuel R. Hubbard, III, Solicitor, of
Lexington, all for Respondent.

---

**TURNER, J.:** Quayshaun X. Clark appeals his convictions and sentences for
murder, discharging a firearm into a dwelling, and possession of a weapon during
the commission of a violent crime. On appeal, Clark argues the trial court erred by
(1) failing to charge involuntary manslaughter and (2) failing to charge voluntary
manslaughter under the doctrine of transferred intent. We affirm.

On June 9, 2021, Clark was involved in a shootout at the Rocky Lane mobile home park outside of Batesburg, South Carolina. According to the evidence presented at trial, there were two parties in the neighborhood that day—Clark attended a birthday party for his cousin at Lot 7 and a graduation party was also taking place across the street between Lots 15 and 16.

According to Clark's testimony, around 10:30 p.m., he was sitting in his car, which he had parked near the back porch of the mobile home on Lot 7, facing in the direction of Lots 15 and 16.[1] Clark heard gunshots coming from the area in front of the car and initially ran behind the mobile home, but he then returned to his car and retrieved his AK pistol.[2] He testified he saw a man shooting and walking towards him across the street, so he returned fire because he wanted the shooting to stop. In much of his testimony, Clark described what seems to be a single person shooting and "coming across the street." Clark explained that although he only saw one individual whom he could "sort of make out," he saw shots being fired from the direction of Lots 15 and 16 *and* "a guy come across the street shooting." Further, he stated he could see "silhouettes of people" in the area of Lots 15 and 16 but could not identify them.

Clark stated he felt "scared and lost" and "everything around [him was] just kind of . . . like a blur." Clark fired approximately fifteen rounds in the direction of Lots 15 and 16 until his magazine "went dry." One of those rounds entered the mobile home on Lot 15, striking and killing an eleven-year-old girl (Victim).

---

[1] The State presented conflicting testimony showing Clark armed himself prior to the first shots being fired and gave his 9mm pistol to another man present at the party; no other witness saw anyone cross the street and no shell casings were found in the area where the man firing at Clark was alleged to have been; Clark fled the scene before law enforcement arrived; and Clark gave multiple untrue statements to police about his involvement, including initially denying that he shot a gun or that he saw anyone shooting at him. However, because our standard of review requires us to view the evidence in the light most favorable to Clark, we have focused on his version of events here.

[2] Clark testified he had three guns in his car—"an AR pistol that shoots 300 blackout," "an AK pistol that shoots [a] 7.62 [mm bullet,]" and "an FN pistol 509," which is a 9mm pistol. He stated he typically stored the AK and AR pistols in the trunk and the FN pistol in the glove box because he did not want his daughter to gain access to them.

Clark requested jury instructions on involuntary manslaughter and voluntary manslaughter. He asserted he killed Victim while acting lawfully in self-defense but with a reckless disregard for the safety of others in shooting towards the homes on Lots 15 and 16. He also argued voluntary manslaughter was appropriate because he acted while under the sudden heat of passion due to being fired upon first, and he asserted that the doctrine of transferred intent applies to both murder and manslaughter. The trial court denied the request for an involuntary manslaughter instruction because "[t]here was not any testimony about any accident or [that the shooting] wasn't intentional." The trial court also declined to give the voluntary manslaughter charge because our courts have "not applied the doctrine of transferred intent to voluntary manslaughter." It also noted that it did "not believe the evidence even support[ed] a voluntary manslaughter [charge] in this case, nor was there any overt act by [V]ictim to indicate any provocation by [V]ictim." Finally, the trial court stated it had not heard any testimony or evidence "about a heat of passion or uncontrollable impulse to do violence." The trial court charged self-defense without objection.

The jury convicted Clark of murder, discharging a firearm into a dwelling, and possession of a weapon during the commission of a violent crime, and the trial court sentenced him to an aggregate term of forty-eight years' imprisonment. This appeal followed.

**ISSUES ON APPEAL**

I.      Did the trial court err by failing to charge involuntary manslaughter as a lesser-included offense?

II.     Did the trial court err by failing to charge voluntary manslaughter as a lesser-included offense under the doctrine of transferred intent?

**LAW/ANALYSIS**

"An appellate court will not reverse a trial court's decision regarding a jury instruction unless there is an abuse of discretion." *State v. Brooks*, 428 S.C. 618, 625, 837 S.E.2d 236, 239 (Ct. App. 2019). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.* (quoting *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166-67 (2007)).

"The trial [court] determines the law to be charged on the presentation of evidence at trial." *State v. Shuler*, 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001). "If there

is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed, the defendant is entitled to such charge.'" *State v. Starnes*, 388 S.C. 590, 596, 698 S.E.2d 604, 608 (2010). "A trial court should refuse to charge a lesser-included offense only where there is no evidence the defendant committed the lesser rather than the greater offense." *State v. Crosby*, 355 S.C. 47, 51, 584 S.E.2d 110, 112 (2003). "In determining whether the evidence requires a charge on [a lesser-included offense], this [c]ourt must view the facts in the light most favorable to the defendant." *State v. Childers*, 373 S.C. 367, 373, 645 S.E.2d 233, 236 (2007).

## I.     Involuntary Manslaughter

Clark argues the trial court erred in denying his request to charge involuntary manslaughter because (1) the evidence created a "factual issue for the jury . . . as to whether the shooting itself was committed intentionally or unintentionally" and (2) he was lawfully engaged in self-defense when he shot "in a manner that the jury could reasonably infer was a reckless disregard for the safety of others." We disagree.

Involuntary manslaughter is either "the unintentional killing of another without malice, but while engaged in an unlawful activity not naturally tending to cause death or great bodily harm" or "the unintentional killing of another without malice, while engaged in a lawful activity with reckless disregard for the safety of others." *State v. Wigington*, 375 S.C. 25, 35, 649 S.E.2d 185, 190 (Ct. App. 2007). "To constitute involuntary manslaughter, there must be a finding of criminal negligence, statutorily defined as a reckless disregard of the safety of others." *Crosby*, 355 S.C. at 52, 584 S.E.2d at 112. "[T]he negligent handling of a loaded gun will support a finding of involuntary manslaughter." *State v. Light*, 378 S.C. 641, 648, 664 S.E.2d 465, 469 (2008).

Further, "a self-defense charge and an involuntary manslaughter charge are not mutually exclusive, as long as there is any evidence to support both charges." *Id.* at 650, 664 S.E.2d at 470. However, "[t]o warrant a jury charge on involuntary manslaughter under either definition, there must be some evidence that the killing was unintentional." *Sullivan v. State*, 407 S.C. 241, 244-45, 754 S.E.2d 885, 887 (Ct. App. 2014).

Clark contends there is evidence that the killing was unintentional because he did not intend to kill anyone and he was scared and "everything around [him was] . . . just kind of a blur." However, Clark testified repeatedly that he fired his gun aiming at a specific target—the man or group of people he saw shooting at him

from the direction of Lots 15 and 16—and for a specific reason—because he was trying to stop the gunshots; further, he stated he only stopped shooting because "[his] magazine went dry." Although Clark maintained he only fired in self-defense and did not mean to shoot Victim, we find no evidence that Clark pulled the trigger unintentionally. Thus, we hold Clark was not entitled to an instruction on involuntary manslaughter. *See State v. Pickens*, 320 S.C. 528, 531, 466 S.E.2d 364, 366 (1996) (holding the defendant was not entitled to a charge of involuntary manslaughter when he "admitted he shot the gun" but "contend[ed] he acted lawfully but recklessly in defending himself"); *Douglas v. State*, 332 S.C. 67, 74, 504 S.E.2d 307, 310-11 (1998) (reasoning that because "involuntary manslaughter is at its core an unintentional killing[,]" when "a defendant intentionally arms himself and shoots into a crowd . . . he is not entitled to an involuntary manslaughter charge"); *Sullivan*, 407 S.C. at 245, 754 S.E.2d at 887 ("When the victim was killed by a gunshot, and no evidence is presented showing the defendant fired the gun unintentionally, the defendant is not entitled to a charge of involuntary manslaughter."). We therefore affirm the trial court as to this issue. *See Shuler*, 344 S.C. at 632, 545 S.E.2d at 819 ("The trial [court] determines the law to be charged on the presentation of evidence at trial."); *Brooks*, 428 S.C. at 625, 837 S.E.2d at 239 ("An appellate court will not reverse a trial court's decision regarding a jury instruction unless there is an abuse of discretion.").

## II.    Voluntary Manslaughter

Clark next argues the trial court erred in refusing his request to charge voluntary manslaughter. He asserts there was evidence in the record that he did not intend to kill Victim or the person shooting at him; thus, the shooting was without malice. Further, Clark asserts that he shot while "under the sudden heat of passion and in response to sufficient legal provocation" because he was fired upon first, which "overcame his capability of cool reflection and caused him to act in an uncontrollable impulse to do violence." Clark argues that the doctrine of transferred intent applies to voluntary manslaughter pursuant to *State v. Fennell*,[3] and "traditional common law aspects of voluntary manslaughter," such as the requirement that the victim be the source of the provocation, are also transferred when a defendant fires at the person who provoked him or her. We disagree with Clark's reasoning and affirm the trial court.

"Whether a voluntary manslaughter charge is warranted turns on the facts." *Starnes*, 388 S.C. at 597, 698 S.E.2d at 608. "If the facts disclose any basis for the

---

[3] 340 S.C. 266, 531 S.E.2d 512 (2000).

charge, the charge must be given." *Id.* "To warrant the court in eliminating the offense of manslaughter it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." *State v. Wharton*, 381 S.C. 209, 214, 672 S.E.2d 786, 788 (2009).

"Voluntary manslaughter is the unlawful killing of a human being in [a] sudden heat of passion upon sufficient legal provocation." *Shuler*, 344 S.C. at 632, 545 S.E.2d at 819. "[B]oth heat of passion and sufficient legal provocation must be present at the time of the killing." *Starnes*, 388 S.C. at 596, 698 S.E.2d at 608. "'A defendant is not entitled to a voluntary manslaughter charge merely because he was in a heat of passion' or 'merely because he was legally provoked.'" *Leggette v. State*, 440 S.C. 590, 602, 892 S.E.2d 153, 160 (Ct. App. 2023) (quoting *Starnes*, 388 S.C. at 596-97, 698 S.E.2d at 608), *cert. denied* Aug. 13, 2024. "Rather, 'there must be evidence that the heat of passion was caused by sufficient legal provocation.'" *Id.* (quoting *Starnes*, 388 S.C. at 597, 698 S.E.2d at 608).

"[A] person's fear immediately following an attack or threatening act may cause the person to act in a sudden heat of passion." *Starnes*, 388 S.C. at 598, 698 S.E.2d at 609. "However, the mere fact that a person is afraid is not sufficient, by itself, to entitle a defendant to a voluntary manslaughter charge." *Id.* "[I]n order to constitute 'sudden heat of passion upon sufficient legal provocation,' the fear must be the result of sufficient legal provocation *and* cause the defendant to lose control and create an uncontrollable impulse to do violence." *Id.*; *see also Shuler*, 344 S.C. at 632, 545 S.E.2d at 819 ("Both heat of passion *and* sufficient legal provocation must be present at the time of killing to constitute voluntary manslaughter." (emphasis added)). Moreover, the "[p]rovocation necessary to support a voluntary manslaughter charge must come from some act of or related to the victim in order to constitute sufficient legal provocation." *State v. Locklair*, 341 S.C. 352, 362, 535 S.E.2d 420, 425 (2000).

### A.     Heat of passion

We find the trial court correctly denied the voluntary manslaughter instruction because Clark failed to prove he acted under the sudden heat of passion such that he was overcome by an uncontrollable impulse to do violence.

In *Childers*, the defendant "testified he was provoked by the victim's former brother-in-law and he fired his gun in response to being first shot at by the ex-brother-in-law." 373 S.C. at 373, 645 S.E.2d at 236. The shot, however, hit and killed the victim. *Id.* at 370, 645 S.E.2d at 234-35. The defendant asserted that he did not intend to harm anyone and only fired because he was fired upon.

*Id.* at 370-71, 645 S.E.2d at 235. The concurrence by then-Chief Justice Toal would have held that the defendant was not entitled to a voluntary manslaughter instruction because it, "by definition, requires a criminal intent to do harm to another[,]" but he testified he did not mean to harm *anyone* and only wanted to make his ex-brother-in-law stop shooting at him. *Id.* at 375, 645 S.E.2d at 237 (Toal, C.J., concurring in result). Therefore, "according to [his] story, he had no criminal intent whatsoever." *Id.* As the concurrence observed, "[i]f, as he suggests, the defendant returned fire in a panic for his life, surely the defense of self-defense would be appropriate." *Id.* However, "[w]ithout any evidence supporting the view that the defendant fired the fatal shots while under an 'uncontrollable impulse to do violence,' the trial court properly declined to charge the law of voluntary manslaughter to the jury." *Id.* at 376, 645 S.E.2d at 237.

Similarly, in *State v. Niles*, the supreme court held the trial court did not err in refusing to give a voluntary manslaughter instruction because "there was no evidence Niles acted within a sudden heat of passion." 412 S.C. 515, 521-22, 772 S.E.2d 877, 880 (2015). The court noted, "Niles's own testimony [did] not establish that he was overtaken by a sudden heat of passion such that he had an *uncontrollable impulse to do violence.*" *Id.* at 522, 772 S.E.2d at 880.

> Rather, Niles testified that he did not want to hurt the victim; that he shot with his eyes closed; that he was merely attempting to stop the victim from shooting; and that when he shot his gun, he was thinking of [his fiancée's safety] rather than of perpetrating violence upon the victim.

*Id.* at 522-23, 772 S.E.2d at 880. The supreme court stated that because "Niles, by his own testimony, lacked the intent to harm the victim, [it could] not see how a voluntary manslaughter charge would have been appropriate." *Id.* at 523, 772 S.E.2d at 881.

These cases closely match the scenario testified to by Clark—*he did not want to hurt anyone* and only fired because he wanted the shooting to stop. Thus, although Clark may have been understandably afraid, his testimony does not illustrate "an uncontrollable impulse to do violence." *See Starnes*, 388 S.C. at 598-99, 698 S.E.2d at 609 ("Succinctly stated, to warrant a voluntary manslaughter charge, the defendant's fear must manifest itself in an uncontrollable impulse to do violence."). Rather, Clark made a calculated decision to return fire in the direction that the shots were coming from, with a defined purpose of making the shooting stop. As *Starnes* explains, "[a] person may act in a deliberate, controlled manner,

notwithstanding the fact that he is afraid or in fear." *Id.* at 599, 698 S.E.2d at 609. "Conversely, a person can be acting under an uncontrollable impulse to do violence and be incapable of cool reflection as a result of fear." *Id.* However, only "[t]he latter situation constitutes sudden heat of passion." *Id.*

Because we find Clark failed to prove that he acted under the sudden heat of passion such that he was overcome by an uncontrollable urge to do violence, we affirm the trial court's refusal to give the voluntary manslaughter instruction. *See Brooks*, 428 S.C. at 625, 837 S.E.2d at 239 ("An appellate court will not reverse a trial court's decision regarding a jury instruction unless there is an abuse of discretion."); *Shuler*, 344 S.C. at 632, 545 S.E.2d at 819 ("The trial [court] determines the law to be charged on the presentation of evidence at trial."); *Starnes*, 388 S.C. at 598, 698 S.E.2d at 609 (explaining the defendant's "fear must be the result of sufficient legal provocation *and* cause the defendant to lose control and create an uncontrollable impulse to do violence").

### B.   Provocation by the victim

Additionally, Clark relies on *Fennell* to assert that transferred intent applies to voluntary manslaughter; essentially, he argues transferred intent operates to shift the assailant's provocation as if it originated *from* the victim, and, in return, his non-malice intent towards the assailant is also shifted *to* the victim. *See Fennell*, 340 S.C. at 272, 531 S.E.2d at 515 ("[A] defendant may be found guilty of murder or manslaughter in a case of bad or mistaken aim under the doctrine of transferred intent."). At first glance, *Fennell* appears to support Clark's position and resolve the question. However, multiple cases decided after *Fennell* have held the provocation must originate from the victim. Moreover, although our supreme court has stated that "the applicability of the doctrine of transferred intent to voluntary manslaughter cases where the defendant kills an unintended victim upon sufficient legal provocation committed by a third party remains an unsettled question in South Carolina," it has never overruled the post-*Fennell* line of cases. *See Wharton*, 381 S.C. at 215, 672 S.E.2d at 789 (declining to reach the issue of whether "the doctrine of transferred intent was inapplicable to voluntary manslaughter"). Thus, we find the trial court properly denied Clark's request for a voluntary manslaughter instruction because provocation must come from the victim, not a third party.

In *Locklair*, which was decided only months post-*Fennell*, the supreme court reaffirmed that the victim must be the source of the provocation. 341 S.C. at 362, 535 S.E.2d at 425 ("Provocation necessary to support a voluntary manslaughter charge must come from some act of or related to the victim in order to constitute

sufficient legal provocation.").  In that case, "Locklair argue[d] that the trial [court] erred by refusing to charge voluntary manslaughter because: (1) there was evidence of a domestic dispute between Locklair and [the victim]; and (2) [the victim's] mother threw a cigarette case at him immediately before he shot [the victim]." *Id.* at 359, 535 S.E.2d at 424.  Our supreme court affirmed the trial court's decision not to give the charge, noting the "overt act" of throwing the cigarette case "was made by a third party, not the deceased, and *South Carolina has not recognized sufficient legal provocation from a third party that can be transferred to the victim.*"  *Id.* at 363, 535 S.E.2d at 425 (emphasis added).

Next, in *Childers*, which was decided seven years after *Fennell*, our supreme court considered a similar factual scenario to that presented in this case and ultimately held the defendant was not entitled to a voluntary manslaughter instruction because the provocation did not originate with the victim.[4]  *See Childers*, 373 S.C. at 373-74, 645 S.E.2d at 236.  In that case, the plurality held, "[v]iewing the evidence in the light most favorable to Childers, this factual scenario [was] completely void of any evidence supporting a charge of voluntary manslaughter" *because* "the overt act that produces the sudden heat of passion must be made by the victim."  *Id.*

Finally, in *Leggette*, this court affirmed the trial court's decision to give a voluntary manslaughter charge, which Legette opposed in part because he was not "engaged in any argument or altercation with [the victim]" and "the evidence did not show [the victim] committed an overt act or provoked [Leggette] into firing his weapon."[5]  440 S.C. at 601, 892 S.E.3d at 159.  In that case, Leggette shot at two men with whom he had a history of previous altercations, after they followed and approached him outside of a bar; one man, Ingram, was injured, and the other, Tisdale, was killed.  440 S.C. at 594-96, 892 S.E.2d at 156-57.  The trial court gave a voluntary manslaughter instruction, and this court affirmed because although the testimony established the "main provocation" for the shooting came from Ingram, Tisdale accompanied Ingram in following and approaching Leggette in a threatening manner.  *Id.* at 604, 892 S.E.2d at 161.  *Leggette* is an example of how *Fennell*'s statement that "a defendant may be found guilty of murder or manslaughter in a case of bad or mistaken aim under the doctrine of transferred

---

[4] We acknowledge that *Childers* was a plurality opinion, with one justice concurring in result only and two justices dissenting.  373 S.C. at 374, 645 S.E.2d at 236.

[5] *Leggette* was a post-conviction relief case, and the issue was raised in the context of whether trial counsel was ineffective for failing to object to the trial court's instruction.  440 S.C. at 604, 892 S.E.2d at 161.

intent" may be harmonized with the requirement that the provocation come from the victim, rather than a third-party. *Fennell*, 340 S.C. at 272, 531 S.E.2d at 515. Leggette's testimony indicated he was firing at Ingram, as Ingram was the one who moved toward him and made a motion like he was pulling a gun; however, because Tisdale at least contributed to the provocation by accompanying Ingram, the voluntary manslaughter instruction was proper despite Tisdale not being the intended target. *Leggette*, 440 S.C. at 604, 892 S.E.2d at 160-61.

Although *Wharton* stated that the applicability of transferred intent in this situation "remains an unsettled question[,]" it declined to rule on the issue. 381 S.C. at 215, 672 S.E.2d at 789. However, we cannot ignore other precedent which has stated that provocation must come from the victim, nor can we reconcile *Wharton*'s statement with *Locklair*'s proclamation that "South Carolina *has not recognized* sufficient legal provocation from a third party that can be *transferred to the victim*." 341 S.C. at 363, 535 S.E.2d at 425 (emphases added); *see also State v. Cheeks*, 400 S.C. 329, 342, 733 S.E.2d 611, 618 (Ct. App. 2012) ("[T]his court lacks the authority to rule against prior published precedent from our supreme court, but is bound by the decisions of the supreme court."), *aff'd as modified*, 408 S.C. 198, 758 S.E.2d 715 (2014); S.C. Const. art. V, § 9 ("The decisions of the Supreme Court shall bind the Court of Appeals as precedents."). Thus, because it is undisputed that Victim was an innocent bystander who was not the source of the provocation, we hold Clark was not entitled to a voluntary manslaughter instruction. *See Locklair*, 341 S.C. at 363, 535 S.E.2d at 425; *see also Brooks*, 428 S.C. at 625, 837 S.E.2d at 239 ("An appellate court will not reverse a trial court's decision regarding a jury instruction unless there is an abuse of discretion."); *Shuler*, 344 S.C. at 632, 545 S.E.2d at 819 ("The trial [court] determines the law to be charged on the presentation of evidence at trial.").

## CONCLUSION

Based on the foregoing, the decision of the trial court is **AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS, J., concur.**